UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------

DOTAN NEWMAN, *et al.*,

        Plaintiffs,

        -against-

JEWISH AGENCY FOR ISRAEL, *et al.*,

        Defendants.

------------------------------------------------------

16-cv-7593

OPINION & ORDER

WILLIAM H. PAULEY III, United States District Judge:

        Defendants Jewish Agency for Israel, et al., move to dismiss Plaintiffs' amended complaint. For the reasons that follow, Defendants' motion to dismiss is granted.

## BACKGROUND

        The operative facts stem exclusively from proceedings in Israel. Plaintiffs are a group of seven divorced fathers who allege that they are victims of a conspiracy orchestrated by former and current Israeli government officials and a number of charities. Plaintiffs allege they were injured in various ways, ranging from wage garnishment to restrictions on their travel.

        Distilling the allegations in the amended complaint ("Complaint"), which are accepted as true for purposes of this motion, the mechanics of the conspiracy unfold in the following manner: an Israeli family court enters an order related to the dissolution of a Plaintiff's marriage—usually for alimony and/or child support—imposing a financial obligation on that Plaintiff. The agency responsible for collecting payment on such obligations—the Debt Collections Office in Israel—"wrongfully refuse[s] to accept [the] payments . . . and arbitrarily and capriciously," absent judicial approval, changes the amount owed and charges excessive fines resulting from a failure to pay the modified balance. (Amended Complaint ("Compl."),

ECF No. 40, ¶ 8(b).) Israeli officials from various levels of the government (the "Israeli Officials") either control, oversee, or facilitate the Debt Collections Office's efforts to unlawfully collect these "arbitrary and excessive debts." (Compl. ¶ 45.)

As Plaintiffs' debts grow, the Debt Collections Office deploys a number of coercive tactics to obtain payment, ranging from making false arrests to threatening Plaintiffs' family members. (Compl. ¶ 8(b).) When Plaintiffs fail or refuse to pay these debts, they face severe consequences: an order freezing their bank accounts and credit cards, garnishment of their wages, imposition of excessive interest rates, issuance of stop-travel orders prohibiting them from traveling outside of Israel, and revocation of their driver's licenses. To add insult to injury, Plaintiffs are cast as "deadbeat dads" and "abusive fathers" solely because of their failure to honor their financial obligations.

Another part of the conspiracy involves actions taken by various Jewish or Christian fundraising organizations and individuals (the "Fundraising Defendants"). According to the Complaint, the Fundraising Defendants offer money and services to Plaintiffs' ex-wives in exchange for their agreement to assert "false claims and [ ] false allegations against their ex-husbands relating to their payment of spousal and child support." (Compl. ¶ 58.) The filing of these complaints authorizes the Debt Collections Office to "manipulat[e] the amounts of the spousal and child support owed [by Plaintiffs] and thereby provide examples for the Fundraising Defendants to raise funds." (Compl. ¶ 59.) Those examples—"deadbeat" fathers who have abandoned their child support obligations—are prominently advertised on billboards and through communications soliciting donations on behalf of the Fundraising Defendants' organizations.

As a result of their ex-wives' complaints, Plaintiffs lose custody of their children. (See e.g., Compl. ¶¶ 8, 95.) Consequently, their children are placed into childcare services

managed by the Fundraising Defendants who profit from these arrangements. To maintain this lucrative scheme, the Fundraising Defendants interfere with Plaintiffs' subsequent attempts to regain custody.

Plaintiffs assert six separate causes of action against the Israeli Officials and Fundraising Defendants: (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) aiding and abetting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (4) violations of RICO; (5) extortion; and (6) mail fraud.

## DISCUSSION

I. Standard

To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A "plausible" claim is "more than a sheer possibility that a defendant has acted unlawfully" but is less than a "probability requirement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "With regard to pro se complaints, the court construes the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff[s'] favor."[1] Jackson v. Cnty. of Rockland, 450 F. App'x. 15, 18 (2d Cir. 2011).

II. Subject Matter Jurisdiction

Dismissal for lack of subject matter jurisdiction is proper "when the district court lacks the statutory or constitutional power to adjudicate [the claims]." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The Foreign Sovereign Immunities Act ("FSIA") is the

---

[1] Plaintiffs commenced this action pro se and represented themselves in that capacity through the initial pretrial conference, amendment of their Complaint, and opposition to Defendants' motion to dismiss. At the eleventh hour before oral argument on this motion, however, an attorney appeared on their behalf, explaining that he would represent them solely for purposes of arguing their opposition to the motion to dismiss. Notwithstanding counsel's belated appearance, this Court construes the Plaintiffs' pleadings and papers under the liberal standard typically afforded to pro se litigants.

"sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Under the FSIA, a foreign state is presumed to be immune from suit and is in fact immune unless one or more of the FSIA's exceptions apply. See 28 U.S.C. §§ 1604–1607; Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). Such immunity extends to a foreign state's political subdivisions, agencies, and instrumentalities. See 28 U.S.C. § 1603(a).

Individuals acting in their official capacities are considered agencies or instrumentalities of a foreign state. Matar v. Dichter, 500 F. Supp. 2d 284, 289 (S.D.N.Y. 2007) ("[N]umerous courts have found that immunity under the FSIA extends also to agents of a foreign state acting in their official capacities."); Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027 (D.C. Cir. 1997). "At the time the FSIA was enacted, the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for acts performed in his official capacity. An immunity based on acts—rather than status—does not depend on tenure in office." Matar v. Dichter, 563 F.3d 9, 14 (2d Cir. 2009). However, an official is "not entitled to immunity under the FSIA for acts that are not committed in an official capacity." Jungquist, 115 F.3d at 1027 (internal citations omitted).

Plaintiffs contend that no such immunity applies here because the Israeli Officials' alleged actions went "beyond the scope of [their] official responsibilities." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). Acts exceeding the scope of an official's duties are usually those of "a personal and private nature." Leutwyler, 184 F. Supp. 2d at 287. The focus, in determining whether the Israeli Officials' actions were properly within the ambit of their official duties, should be on "the

4

individual[s'] alleged actions, rather than the alleged motives underlying them." Leutwyler, 184 F. Supp. 2d at 287.

Here, all of the Israeli Officials' acts were taken in their capacities as government officials. The Complaint alleges that the Israeli Officials entered illegal orders, made extra-judicial demands, arbitrarily altered amounts owed, and assessed improper fees against Plaintiffs. (Compl. ¶ 45.) The Israeli Officials also issued arrest warrants, froze bank accounts, and garnished wages. (Compl. ¶¶ 106, 138, 210, 222.) Each of these actions represent official conduct taken in response to Plaintiffs' apparent failure to comply with their child and spousal support obligations. The authority to take such actions arises directly from their positions as government officials tasked with overseeing the Debt Collections Office, enforcing the child and spousal support orders, and providing judicial recourse for unpaid debts.

Plaintiffs characterize these actions as wrongful and illegal, but such slights do not render the acts any less official. In re Terrorist Attacks on Sept. 11, 2001, 122 F. Supp. 3d 181, 189 (S.D.N.Y. 2015) ("Such an assertion is merely an artful way of implicating the jus cogens doctrine," which is "not a limitation to a foreign official's right to immunity in U.S. courts where, as here, that official acted in his official capacity."). Indeed, if Plaintiffs could hurdle immunity by alleging that the acts were illegal, "such a rule would eviscerate the protection of foreign official immunity and would contravene federal law on foreign official immunity." Giraldo v. Drummond Co., Inc., 808 F. Supp. 2d 247, 250 (D.D.C. 2011). The dispositive question is whether the defendant was a government official authorized to take the actions at issue here. The Israeli Officials—as bureaucrats tasked with overseeing the Debt Collections Office and judges empowered to remedy delinquencies associated with divorce decrees—are "entitled to sovereign immunity under the FSIA because [they] are being sued

5

solely for actions taken in [their] official capacity." Matar, 500 F. Supp. 2d at 291. Without any basis for the exercise of subject matter jurisdiction, Defendants' motion to dismiss the claims against the Israeli Officials is granted.

III. Personal Jurisdiction

While lack of subject matter jurisdiction suffices to dispose of the claims against the Israeli Officials, it bears noting that there also is no basis to exercise personal jurisdiction. "Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry. First [the court] look[s] to the law of the forum state to determine whether personal jurisdiction will lie. If jurisdiction lies, [the court] consider[s] whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013).

New York's C.P.L.R. § 302 applies to jurisdiction over non-domiciliaries. Under C.P.L.R. § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either "in person or through an agent": (i) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (ii) "commits a tortious act within the state"; (iii) "commits a tortious act without the state causing injury to person or property within the state . . . if he [a] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or [b] expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or (iv) "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(1)–(4).

6

None of the scenarios set forth in § 302(a) apply here. With the exception of a single, unsubstantiated reference to Defendant Livni's residence in Brooklyn, the Complaint is bereft of any allegation connecting the Israeli Officials to the State of New York. Even if Plaintiffs sought to use Livni's Brooklyn residence as a hook for jurisdiction under C.P.L.R. § 302(a)(4), such an attempt would fail because they must demonstrate "a relationship between the property and the cause of action sued upon." Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D. 2d 152, 159 (N.Y. App. Div. 1st Dep't 1992). The underlying allegations lack any nexus to Livni's home in Brooklyn.

Moreover, an exercise of personal jurisdiction would not comport with constitutional due process. The Complaint makes no showing of the minimum contacts necessary to "justify the court's exercise of personal jurisdiction" over any of the Defendants. Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 347 (S.D.N.Y. 2015). Even under a liberal construction, Plaintiffs' allegations fall woefully short of establishing that the Israeli Officials "purposefully avail[ed] [themselves] of the privilege of conducting activities" within New York, thus "invoking the benefits and protections of its laws . . . such that [they] should reasonably anticipate being haled into court" here. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–75 (1985)). Additionally, maintaining jurisdiction over Israeli Officials would be unreasonable. Their actions—which form the primary basis for the requested relief in this action—were taken exclusively in Israel in the course of their duties as current and former government officials. Compelling these defendants to litigate Plaintiffs' claims in New York would impose excessive burdens. Nor could Plaintiffs litigate this action anywhere else in the United States because no

7

state has an interest in adjudicating this case. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113–14 (1987).

The federal grounds for jurisdiction are equally unavailing. The RICO statute does not, by itself, confer personal jurisdiction. Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) ("Plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit."). And the federal long arm statute, under Rule 4(k)(2), provides no basis for jurisdiction on the facts alleged in the Complaint. While the rule authorizes personal jurisdiction for federal claims if doing so is "consistent with the United States Constitution," Plaintiffs' failure to establish minimum contacts and the reasonableness of exercising jurisdiction under C.P.L.R. § 302 extends with equal force to the federal long arm statute. BMW of N. Am. LLC v. M/V Courage, 2017 WL 2223052, at *3 (S.D.N.Y. May 19, 2017) (requiring sufficient contacts with the United States as a whole); Porina v. Marward Shipping Co., 521 F.3d 122, 127 (2d Cir. 2008) (courts must consider whether "the assertion of personal jurisdiction is reasonable under the circumstances of the particular case"). Accordingly, all of Plaintiffs' claims against the Israeli Officials are also dismissed for lack of personal jurisdiction.

IV. Civil RICO

Plaintiffs assert a civil RICO claim against both the Israeli Officials and the Fundraising Defendants. Because all claims against the Israeli Officials are dismissed for lack of subject matter and personal jurisdiction, this Court focuses its analysis on the civil RICO claim as it pertains to the Fundraising Defendants.

Relief under the civil RICO statute is appropriate if the Plaintiffs can establish: (1) that they suffered an injury to business or property; (2) that their injury is a domestic one; and

8

(3) that the injury was proximately caused by the defendants' violation of 18 U.S.C. § 1962. See 18 U.S.C. § 1964(c). The third requirement—violations of 18 U.S.C. § 1962—lays out the elements of a substantive RICO violation, including (1) that defendants were employed by, or associated with, an enterprise affecting interstate commerce; and (2) that they participated in the conduct of the enterprise's affairs through at least two predicate acts of racketeering activity. See 18 U.S.C. § 1962(b)–(c).

Plaintiffs' civil RICO claim fails at the first step—alleging facts to show a domestic injury to business or property. As an initial matter, it is difficult to discern the exact nature of Plaintiffs' injury. Plaintiffs allege a plethora of injuries resulting from the Fundraising Defendants' activities—harassment, garnishment, personal injuries, false arrest, and asset freezes, among others. But only injuries to business or property are covered by the RICO statute. Bascunan v. Elsaca, 874 F.3d 806, 817 (2d Cir. 2017) ("A plaintiff bringing a civil RICO claim must allege an injury to his 'business or property'; he cannot, for example, recover for 'personal injuries.'"). Therefore, to the extent the Plaintiffs seek relief for "personal injury or harassment, not damage to business or property," their RICO claims fail on grounds that such injuries are "not [of] the sort . . . cognizable under RICO." Savine–Rivas v. Farina, 1992 WL 193668, at *3 (E.D.N.Y. Aug. 4, 1992); see also Burdick v. Am. Exp. Co., 865 F.2d 527, 529 (2d Cir. 1989) (interference with business and ability to earn living are "type[s] of harm [that are] simply too remotely related to the predicate acts of mail and securities fraud to support a claim under RICO").

But even the alleged injuries to business or property fail to make out a RICO injury because they are not domestic injuries. For example, the Complaint alleges that Defendants "took all the money in [Plaintiff Weisskopf's] bank account[,] intentionally leaving a

9

negative balance in his bank account" without making any reference to the account's location. (Compl. ¶ 136.) Plaintiffs vaguely allude to other bank and financial accounts throughout the Complaint. (See e.g., Compl. ¶¶ 152, 176, 188, 196, 207, 210, 213.) From what this Court can gather, the thrust of Plaintiffs' grievance is that the Defendants' actions saddled them with outsized debts arising from fictitious orders that ultimately forced them to liquidate their assets leaving them in dire financial straits. But while "injury to tangible property is generally a domestic injury only if the property was physically located in the United States," the Plaintiffs offer no specific allegations concerning where their accounts were located or used. Bascunan, 874 F.3d at 819.

Moreover, to the extent that Plaintiffs seek to establish a domestic connection by alleging that some of the Fundraising Defendants located in the United States made off with illicit proceeds derived from Plaintiffs' assets, the "only domestic connections alleged here were acts of the defendant[s]." Bascunan, 874 F.3d at 819 (emphasis original). It improperly turns the focus on the location of the Defendants, and not, as it should, on the location of Plaintiffs' property or financial interests. Bascunan, 874 F.3d at 819.

Finally, the civil RICO claim fails because the Plaintiffs have not sufficiently established the requisite predicate acts. The Complaint ticks off more than a dozen criminal acts, ranging from financial institution fraud to slavery, but "RICO claims must be pled with specificity." Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc., 2009 WL 2524864, at *4 (E.D.N.Y. Aug. 14, 2009). The Complaint is particularly deficient with respect to predicate acts pertaining to fraud, since those acts "must be pled in accordance with the higher pleading requirements of Rule 9(b)." Morrow v. Black, 742 F. Supp. 1199, 1203 (E.D.N.Y. 1990). But beyond alleging in conclusory fashion that the Defendants devised a fraud using the mails and

10

wires, the Complaint offers scant detail on the defendants, the communications, and the purpose or substance of such communications to meet the heightened standard under which mail fraud or wire fraud may be alleged as predicate acts. Rivera v. Golden Nat. Mortg. Banking Corp., 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2005) ("Plaintiff states broadly that Defendants . . . engaged in a secret scheme of conduct . . . but neglects to include names, dates or even allege use of the mails or a telephone."); Wexner v. First Manhattan Co., 902 F.2d 169, 172–73 (2d Cir. 1990) (claim of mail or wire fraud must specify the content, date, and place of any alleged misrepresentation and identity of persons making them).

Mathon v. Feldstein, 303 F. Supp. 2d 317 (E.D.N.Y. 2004), is instructive to the extent it involved a civil RICO claim asserted by a pro se plaintiff who actually alleged with some specificity (more than the Plaintiffs here) the facts underlying the mail and wire fraud predicate acts. But even so, that court found such allegations insufficient because the plaintiff failed "to set forth the content of the items mailed and specify how each of the items were false and misleading," or to "identify the dates that the[] alleged conversations [took] place, where the phone calls [or emails] took place and that during these phone calls [or email communications], the defendants knowingly made false representations to the plaintiff." Mathon, 303 F. Supp. 2d at 323–24. Even under a liberal construction of the Complaint, Plaintiffs similarly fail to allege with sufficient specificity the predicate acts to their RICO claim.

Accordingly, the civil RICO claim against the Fundraising Defendants is dismissed.

V. No Private Right of Action

Plaintiffs assert a number of claims to which there are no private rights of action. Each claim is addressed in turn.

11

### A. Aiding and Abetting a RICO Violation

The Complaint alleges a claim for aiding and abetting a RICO violation against the Fundraising Defendants. However, it has long been held by courts in this District and across the country that "there is no private right of action for aiding and abetting a RICO violation." Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 406 (S.D.N.Y. 2000) (citing LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1088–89 (S.D.N.Y. 1996)). Accordingly, Count Three of the Complaint is dismissed.

### B. Extortion

Plaintiffs assert an extortion claim against both the Israeli Officials and the Fundraising Defendants. But extortion is a criminal offense and may not be converted into a private civil cause of action. Williams v. Jurow, 2007 WL 5463418, at *13 (S.D.N.Y. June 29, 2007) (There "is no private right of action under the federal extortion statute."). In fact, under New York law, "such claim is patently frivolous as extortion is a criminal offense, and may not be pled as a separate cause of action in a civil case." Naples v. Stefanelli, 972 F. Supp. 2d 373, 401 (E.D.N.Y. 2013). Accordingly, Count Five of the Complaint is dismissed.

### C. Mail Fraud

Plaintiffs' final cause of action alleged in the Complaint is a claim for mail fraud pursuant to 18 U.S.C. §§ 1341 and 1343 against the Fundraising Defendants. But as with the prior claims, a mail fraud claim is not actionable as a private cause of action. The mail fraud statute is a "bare criminal statute with no indication of any intent to create a private cause of action, in either the section in question or any other section." Brandstetter v. Bally Gaming, Inc., 2012 WL 4173193, at *6 (E.D.N.Y. Aug. 23, 2012). Accordingly, Count Six of the Complaint is dismissed.

VI. Pre-Suit Injunction

In addition to dismissal, Defendants seek a "finding that [Plaintiffs'] claims are frivolous and an order barring Messrs. Weisskopf and Eliahu from filing future lawsuits without the Court's prior authorization." (Def. Memo. of Law in Support of Motion to Dismiss, ECF No. 89, at 33.) "When a plaintiff files repeated lawsuits involving the same nucleus of operative facts, a district court has the inherent power to enjoin him from filing vexatious lawsuits in the future." Lacy v. Principi, 317 F. Supp. 2d 444, 449 (S.D.N.Y. 2004) (citing Malley v. N.Y. City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997)).

Relevant factors to consider include: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expenses to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir, 792 F.2d at 24.

The two plaintiffs here—Weisskopf and Eliahu—are not first-time litigants. Weisskopf previously filed a raft of other lawsuits, all of which have alleged claims predicated on facts substantially similar to the ones here, throughout the country including a second one in this District. Weisskopf v. Neeman, No. 11 Civ. 665 (W.D. Wisc. Mar. 20, 2013); Weisskopf v. United Jewish Appeal–Fed'n of Jewish Philanthropies of N.Y., Inc., 889 F. Supp. 2d 912 (S.D. Tex. 2012); Weisskopf v. Jewish Agency for Israel, Inc., No. 12 Civ. 6844 (S.D.N.Y. Apr. 30,

13

2013); Weisskopf v. Marcus, No. 16 Civ. 6381 (N.D. Ill. 2016). Eliahu filed a similar action in the Northern District of California which was dismissed before he commenced this action. Eliahu v. State of Israel, No. 14 Civ. 1636, 2015 WL 981517 (N.D. Cal. Mar. 3, 2015), aff'd, 659 F. App'x. 451 (9th Cir. Nov. 2, 2016).

Three factors weigh in favor of the injunctive relief sought by Defendants. First, there is a clear history of vexatious litigation, especially with regard to Weisskopf. In one case, the Western District of Wisconsin chastised Weisskopf for the "spurious, abusive nature of [his] repeated, failed efforts to invoke federal court jurisdiction in the United States over what is essentially an Israeli family-law dispute." Neeman, No. 11 Civ. 665, slip op. at 20. Eliahu, on the other hand, had the appeal in his only other action summarily dismissed by the Ninth Circuit. All of their cases are virtually carbon copies of one another—they depict the same story, grievances, and requests for relief that federal courts in the United States are not authorized to grant.

Second, Weisskopf and Eliahu's motives in pursuing this litigation are quite clear. Having achieved minimal success in Israel, they seek to find any forum in the United States that will entertain any one of their claims. The RICO statute's treble damages provides an extra layer of incentive, but also carves out a path to bypass Israel's ostensibly less generous remedial regimes. RJR Nabisco, 136 S. Ct. at 1206–07. However, their motive in bringing essentially the same lawsuit time and again is misguided because each successive action diminishes the likelihood that they will prevail.

Third, the Defendants have had to incur the necessary expense of defending these baseless lawsuits. These are not insignificant costs. Even if a future lawsuit contains claims that are so meritless that it is considered dead on arrival, Defendants nevertheless must retain counsel

and incur the time and cost of defending even the most frivolous claims in federal court. They should be spared from that burden given the spate of cases—including those filed by other parties who are not plaintiffs here—that have roundly been rejected by courts across the country. See, e.g., Issaschar v. ELI Am. Friends of Israel Ass'n for Child Prot., Inc., No. 13 Civ. 2415 (E.D. Pa. 2014); Issaschar v. ELI Am. Friends of the Israel Ass'n for Child Prot., Inc., No. 15 Civ. 6441 (E.D. Pa. 2016).

Accordingly, Plaintiffs Weisskopf and Eliahu are enjoined from filing lawsuits in the future without this Court's prior authorization.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss this action is granted. The parties are directed to submit a proposed pre-suit injunctive order by December 15, 2017. The Clerk of Court is directed to terminate the motion pending at ECF No. 88.

Dated: December 8, 2017  
      New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.